UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AIRLINE PROFESSIONALS                 :
ASSOCIATION, TEAMSTERS LOCAL          :    NO. 1:04-CV-00663
UNION 1224,                           :
                                      :
          Plaintiff,                  :
                                      :    **OPINION AND ORDER**
                                      :
     v.                               :
                                      :
                                      :
ABX AIR, INC.,                        :
                                      :
          Defendant.

        This matter is before the Court on Plaintiff Airline
Professionals Association, Teamsters Local Union 1224's ("Union")
Motion for Summary Judgment (doc. 14), Defendant ABX Air, Inc.'s
("ABX") Motion for Summary Judgment (doc. 16), Plaintiff's
Memorandum in Opposition to Defendant's Motion for Summary Judgment
(doc. 18), and Defendant's Memorandum in Opposition to Plaintiff's
Motion for Summary Judgment (doc. 17).

**I.    Background**

        Plaintiff Union filed this matter on September 24, 2004,
in an effort to vacate an arbitration award finding Defendant cargo
airline had just cause to terminate and refuse to reinstate a
pilot, Frank Bosela, who allegedly adulterated his urine sample
during a random drug test (doc. 1).  The Chair of the System Board
of Adjustment ("arbitration board"), Nicholas Zumas ("Zumas"),
found clear and convincing evidence in the record that Bosela's

sample tested positive for marijuana, that testing showed he had added an adulterant to his urine sample so as to mask the positive result, and that the adulterant was nitrate, at a concentration level of 6909 ug/ml, more than 10 times the legal cut-off point (doc. 9).  Zumas found the Company's legal obligation to operate with the "highest possible" degree of public safety justified such result (Id.).

Plaintiff disputes the Arbitrator's decision based first on the theory that the Arbitrator exceeded his jurisdiction by disregarding the collective bargaining agreement (doc. 14). Plaintiff's theory is premised on the argument that Defendant had no authority to test Bosela's sample for nitrate, and that the collective bargaining agreement required testing in accordance with federal standards, which were not met (Id.).  Plaintiff next argues that public policy, as set forth in drug testing regulations, Fourth Amendment principles, and due process, require the Court to vacate the arbitration decision (Id.).  Finally, Plaintiff argues the decision permitted an amorphous safety rationale to trump federal and contractual testing safeguards (Id.).

Defendant argues the Court should affirm Zumas' decision, that the Court lacks jurisdiction to revisit the merits of the grievance, and that Plaintiff has failed to demonstrate any recognized ground for vacating the arbitration award (doc. 16). Essentially, Defendant argues, citing to United Paperworkers Int'l

<u>Union v. Misco</u>, 484 U.S. 29 (1987), that the Court must affirm the arbitration award, even if the Court disagrees with the decision on the merits (<u>Id</u>.).

The parties both agree there are no disputes as to material facts in this case (docs. 16 & 18).  The Court agrees and finds the question before the Court is whether there is a legal basis to vacate the Arbitrator's decision.

In order to understand the parties' arguments about the validity of the testing of Bosela's urine sample, it is necessary to review the facts related to such testing, some of which are technical.  LabCorp, a drug testing services company, performed the testing of Bosela's sample on April 15, 1999 (doc. 9).  LabCorp tested for five prohibited substances, marijuana, cocaine, opiates, PCP, and amphetamines (<u>Id</u>.).  Testimony before the arbitrator established that the testing procedure began with a test called the "immunoassay" which is designed to screen out negative samples (<u>Id</u>.).  Bosela's sample tested positive for marijuana with this initial test, with a concentration nearly double the legal cut-off level (<u>Id</u>.).  LabCorp next tested the sample with a more sophisticated "gas chromotography/mass spectrometry" ("GC/MS")test. With this test, a THC (marijuana molecule) "standard" is added to the sample for testing purposes (<u>Id</u>.).  The GC/MS test revealed the THC standard was destroyed after having been added to the sample (<u>Id</u>.).  Defendants' experts, Drs. Caplan and Lappe, testified

before the Arbitrator that only an adulterant could explain such a result (Id.).  The Arbitrator found such testimony "unrefuted," though Plaintiff argues the result should serve only as a trigger for more testing and not as positive evidence of adulteration (doc. 14).  After the GC/MS test, Bosela's sample was subjected to litmus paper dipstick testing, in order to ascertain the nature and concentration of the adulterant (doc. 9).  This test yielded positive results for nitrate (Id.).  Finally, the sample was subjected to a spectrometer test, that measured the concentration of nitrate at 6,909 ug/ml, some ten times higher than the legal cut-off level (Id.).

        After certification of the test results, Defendant terminated Bosela on May 14, 1999 (doc. 16).  On August 9, 1999, after receiving notification of Bosela's drug test result, the Federal Aviation Administration ("FAA") issued an Amended Emergency Order of Revocation revoking all of Bosela's pilot licenses (Id.).  Bosela appealed the FAA's action to the National Transportation Safety Board ("NTSB") (Id.).  Bosela argued that three and a half months after his drug testing, the United States Department of Health and Human Services ("DHHS") codified a "two-test two aliquot requirement" for nitrate testing, that his sample had not been subjected to such test, that LabCorp's dipstick testing was unreliable, and that LabCorp's testing of his sample was therefore not "scientifically suitable," so the results could not be used

against him (docs. 14 & 16).  On January 18, 2001, after a 14-day
hearing, NTSB Administrative Law Judge William A. Pope, II affirmed
the FAA's revocation action (doc. 14).   Although Judge Pope
acknowledged that LabCorp did not conform its litmus dipstick
testing to the manufacturer's instructions, he upheld the FAA's
revocation on the grounds that the existing DHHS directive at the
time of Bosela's testing did not require two aliquot process for
nitrate testing, and that the license revocation could be
predicated on spectrophotometer testing standing alone (Id.).
Plaintiff appealed Judge Pope's decision to the full NTSB (Id.).
The NTSB reversed Judge Pope's decision on the grounds that a two-
test, two-aliquot standard was required to establish nitrite
adulteration, and that the dipstick test was not scientifically
suitable (Id.).

        LabCorp appealed the NTSB decision to the Fourth Circuit,
which affirmed the decision after finding LabCorp lacked standing
to challenge it (doc. 16).  After the Fourth Circuit decision,
Plaintiff, relying on the NTSB decision, requested Defendant
reinstate Bosela's employment (Id.).  Defendant refused, taking the
position that despite the NTSB decision, the evidence left no doubt
that Bosela's sample had been adulterated (Id.).   Plaintiff
subsequently took the issue into arbitration, which concluded on
June 29, 2004 (Id.).   As noted above, Arbitrator Zumas found
Defendant had just cause to terminate and to refuse to reinstate

Bosela, a conclusion that Plaintiff challenges in the present Complaint before the Court (Id.).  Both parties argue in their cross motions that there are no genuine issues of material fact, and they are thus respectively entitled to judgment as a matter of law (docs. 14 & 16).

## II.  Legal Standard for Summary Judgment

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir.1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for

summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for

summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added);

see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879

F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere

existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient; there must be evidence on

which the jury could reasonably find for the [non-movant]."

Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781,

784 (6th Cir. 1994). Accordingly, the non-movant must present

"significant probative evidence" demonstrating that "there is [more

than] some metaphysical doubt as to the material facts" to survive

summary judgment and proceed to trial on the merits. Moore v.

Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see

also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

        Although the non-movant need not cite specific page

numbers of the record in support of its claims or defenses, "the

designated portions of the record must be presented with enough

specificity that the district court can readily identify the facts

upon which the non-moving party relies." Guarino, 980 F.2d at 405,

quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th

Cir.1989)(internal quotation marks omitted). In contrast, mere

conclusory allegations are patently insufficient to defeat a motion

for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d

1155, 1162 (6th Cir. 1990). The Court must view all submitted

evidence, facts, and reasonable inferences in a light most

favorable to the non-moving party. See Matsushita Elec. Indus. Co.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H.
Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,
369 U.S. 654 (1962).  Furthermore, the district court may not weigh
evidence or assess the credibility of witnesses in deciding the
motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating
that no material facts are in dispute.  See Matsushita, 475 U.S. at
587.  The fact that the non-moving party fails to respond to the
motion does not lessen the burden on either the moving party or the
Court to demonstrate that summary judgment is appropriate. See
Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55
(6th Cir. 1991).

**III. Plaintiff's Motion for Summary Judgment (doc. 14)**

Plaintiff Union argues the arbitration award should be
set aside because Arbitrator Zumas exceeded his jurisdiction by
going beyond the bounds of the collective bargaining agreement
("Agreement")(doc. 14).  Specifically, the Union argues Zumas made
no effort to address its argument that the testing of Bosela's
specimen for nitrites was contrary to the Agreement's express terms
(Id.).  Plaintiff argues the express terms only authorize testing
either "in accordance with" the Company's published policy, or as
"required" by applicable law (Id.).  Testing for nitrates satisfies
neither of these two criteria, argues Plaintiff, so the positive

9

test results for nitrate adulterant cannot be used against the employee (Id.).  Plaintiff further argues, as it did successfully before the NTSB, that the application of a one-test standard, as opposed to the two aliquot standard, is contrary to applicable federal standards and public policy (Id.).  Plaintiff further challenges alleged technical defects in the dipstick testing used by LabCorp, and alleged technical deficiencies in validation of the spectrophotometer test (Id.). Finally, citing Northwest Airlines v. Air Line Pilots' Ass'n, 808 F.2d 76, 77 (D.C. Cir. 1987), Plaintiff alleges that in a "fit" of arbitral "chutzpah," Zumas ignored determinations of the FAA and NTSB that the testing was improper, and instead accepted Defendant's "amorphous safety rationale" to trump federal and contractual testing standards (Id.).

Defendant responds that the Court may not revisit the merits of the arbitration decision and reinterpret the contract in favor of the union (doc. 17). Defendant argues, citing Vic Wertz Distributing Co. v. Teamsters Local 1038, 898 F.2d 1136, 1141 (6th Cir. 1990), "[t]he courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on a misinterpretation of the contract" (Id.).  Defendant further argues that as long as the arbitrator was arguably construing or applying the contract and acting within the scope of his authority, the court must defer to such decision (Id. citing United Paperworkers Int'l Union v. Misco,

Inc., 484 U.S. 29, 36 (1987)). Defendant argues that only if the arbitrator's decision explicitly conflicts with the clear and unambiguous language of the contract can the court vacate the award (Id. citing Vic Wertz Distributing Co. v. Teamsters Local 1038, 898 F.2d 1136, 1142-43 (6th Cir. 1990)).

Defendant then addresses Plaintiff's arguments, contending that even if the Court does consider Plaintiff's claims, such claims are simply untrue (Id.). Defendant argues that under the policy, it merely needed "just cause" for Bosela's termination, which the Arbitrator properly found based on the discovery of nitrates in Bosela's urine sample (Id.). Moreover, Defendant argues, nothing in the express language of the Agreement prohibits the testing of a sample for adulterants (Id.). Indeed, argues Defendant, the policy requires a pilot to "submit" to testing, and cheating on such a test indicates the pilot is not submitting to the test as required (Id.). Company policy in effect at the time, argues Defendant, stated that refusal to cooperate with drug testing would result in termination of employment (Id.). The policy, therefore, argues Defendant, need not explicitly include "nitrate" in its list of substances subject to testing (Id.). Indeed, argues Defendant, it would be impossible to list every potential adulterant, as the marketplace for such substances is fluid, and government regulations take time for revision (Id.). Further, argues Defendant, United States Department of

11

Transportation ("DOT") procedures provide for the testing of adulterants as "reasonably incident" to the analysis for controlled substances (Id. citing 49 C.F.R. 40.21).

Next, Defendant argues that nothing in the plain and unambiguous language of the Agreement required two nitrate tests (Id.). The regulation Plaintiff relies upon, DHHS Program Document 37, Defendant signals, was not in effect at the time of the Bosela test (Id.). Defendant further argues that nothing in the plain and unambiguous language of the Agreement precluded the Arbitrator from relying on the result of the spectrophotometer test in arriving at a "just cause" determination (Id.). Defendant argues Plaintiff's critique of the spectrophotometer test was already presented to the Arbitrator, who weighed the testimony of Dr. Caplan, which indicated there was no basis for such argument (Id.).

As for Plaintiff's public policy argument, Defendant argues Plaintiff has not demonstrated the Arbitrator's decision may be vacated on such grounds (Id.). Defendant argues under Union Pac. R.R. v. Sheehan, 439 U.S. 89, 93 (1978), and Jones v. Seabord Sys. R.R., 783 F.2d 639, 642 n.2 (6th Cir. 1986) that there are only three narrow statutory grounds appropriate for judicial review of this arbitration decision: 1) failure of the arbitration board to comply with the requirements of the Railway Labor Act ("RLA")[1], 2)

---

[1]Under 45 U.S.C. § 181 (2005), the arbitration provisions applicable under the Railway Labor Act apply to common carriers by air, such as Defendant in this matter.

failure of the board to conform or confine itself to matters within the scope of its jurisdiction, or 3) fraud and corruption (Id.). Defendant argues however, that even if the Court would reach the merits of Plaintiff's public policy arguments, such arguments lack basis in law and fact (Id.).  Defendant argues there is no evidence that at the time of the Bosela test a well-defined public policy existed requiring two nitrate tests (Id.).  Defendant further argues there is no public policy prohibiting the Arbitrator from finding "just cause" for termination where 1) the immunoassay was positive for marijuana, 2) the GC/MS failed to recover the internal standard,  3) the dipstick test was very positive for nitrate, even where there were deviations from the manufacturer's instructions not supported by a written study, and 4) the spectrophotometer test was positive for nitrate (Id.).

Finally, the Defendant argues that it did not commit any error when it took into account its obligation under 49 U.S.C. §§ 44702(b)(1)(A) to operate with the highest possible degree of safety (Id.).  Defendant signals that Northwest Airlines v. Air Line Pilots' Ass'n, 808 F.2d 76, 77 (D.C. Cir. 1987), in which the court upheld the arbitrator's decision, clearly stands for the proposition that it is very difficult to overturn an arbitrator's decision (Id.).

Having reviewed this matter, the Court does not find Plaintiff's arguments well-taken.  The Supreme Court articulated

the appropriate standard of review of labor arbitration awards in

United Paperworkers International Union v. Misco, Inc., 484 U.S. 29

(1987):

> [T]he arbitrator's award settling a dispute
> with respect to the interpretation or
> application of a labor agreement must draw its
> essence from the contract and cannot simply
> reflect the arbitrator's own notions of
> industrial justice. But as long as the
> arbitrator is even arguably construing or
> applying the contract and acting within the
> scope of his authority, that a court is
> convinced he committed serious error does not
> suffice to overturn his decision. . .

Id. at 38.  Thus, this Court plays a very limited role when asked

to review the decision of an arbitrator. Id. at 36.  An arbitrator

may not completely ignore the plain language of the contract in

question, but a court should not reject an award on the ground that

the arbitrator misread the contract.  Id.

The question before the Arbitrator in this case was not

whether the grievant should maintain his aviation certificate, but

whether the Company had just cause to terminate him.  The

Arbitrator's reasoned decision is not clearly erroneous in finding

just cause to support the termination.

Here, the Arbitrator clearly acknowledged the language of

the Agreement and took it into account when reaching his decision.

The Arbitrator heard and rejected Plaintiff's factual arguments

attempting to throw into question the validity of the testing of

Bosela's sample, and focused his analysis on the question whether

adulteration of a urine sample provides "just cause" for termination (doc. 9).  The Arbitrator also noted ABX's legal obligation to "achieve the highest possible degree of safety in the public interest" (Id.).  Arbitrator Zumas found such obligation must necessarily take precedence over any obligation of deference to the NTSB's decision (Id.).  Taken together, these facts show the Arbitrator was arguably construing or applying the contract and acting within the scope of his authority.  United Paperworkers Int'l Union, 484 U.S. 29, 36.  None of Plaintiff's arguments demonstrate that the arbitrator's decision in this matter explicitly conflicts with the clear and unambiguous language of the Agreement.  General Truck Drivers, Chauffeurs, Warehousmen & Helpers, Local No. 957 v. Dayton Newpapers, Inc., 190 F.3d 434, 437 (6th Cir. 1999).  Although the Court need not address the merits of Plaintiff's arguments, it expressly rejects Plaintiff's contention that Defendant acted improperly in testing Bosela's sample for an adulterant merely because such adulterant was not listed in regulations governing random drug tests.  The Court finds no solid basis to reject the Arbitrator's implicit finding that evidence of an adulterant in a urine sample shows the pilot was not cooperating with the test, and such lack of cooperation could constitute "just cause" for termination in accordance with the Agreement.

The Court further rejects Plaintiff's argument that a "two aliquot" standard was required in this case, as clearly such

15

standard was promulgated after the testing of Bosela.  Moreover,
Defendant's position is well-taken that any technical defects in
the testing of Bosela's sample leaned in his favor or were neutral
in effect.  Plaintiff's public policy arguments do not comport with
the narrow grounds justifying judicial review.  <u>Union Pac. R.R. v.
Sheehan</u>, 439 U.S. 89, 93 (1978), and <u>Jones v. Seabord Sys. R.R.</u>,
783 F.2d 639, 642 n.2 (6th Cir. 1986).  Finally, neither Defendant
nor Arbitrator erred when taking into consideration Defendant's
obligation to provide the highest possible degree of public safety
in the public interest. 49 U.S.C. §§ 44702(b)(1)(A)(2005).

        For all of the above reasons, the Court rejects
Plaintiff's Motion for Summary Judgment (doc. 14), and in
accordance with <u>United Paperworkers International Union v. Misco,
Inc.</u>, 484 U.S. 29 (1987), finds it inappropriate to vacate the
decision of the arbitration panel.

**IV.  Defendant's Cross Motion for Summary Judgment (doc. 16)**

        Having found it inappropriate in this instance to vacate
the decision of the arbitration panel, the Court's consideration of
Defendant's cross motion for summary judgment is greatly
facilitated.  Plaintiff's Response in opposition offers nothing
persuasive to the contrary, essentially reiterating the arguments
addressed above (doc. 18).  As heretofore indicated, the Court
finds the decision of the Arbitrator in this case to arguably
construe or apply the contract in finding "just cause" for Bosela's

16

termination.    Having found  no  basis  therefore  to  vacate  the decision,  the  Court  must  grant  Defendant's  Motion  for  Summary Judgment (doc. 16).  <u>United Paperworkers Int'l Union</u>, 484 U.S. 29, 36.

## V.    Conclusion

The  Court  does  not  find  well-taken  Plaintiff  Union's arguments that the Court should vacate the decision of the System Board  of  Adjustment  finding  "just  cause"  for  Defendant's termination of Frank Bosela's employment.  Defendant's termination of Mr. Bosela comports with its duty under federal law to provide the  highest  possible  degree  of  public  safety  in  the  public interest. 49 U.S.C. §§ 44702(b)(1)(A)(2005).

Accordingly,  the  Court  GRANTS  Defendant  ABX  Air,  Inc.'s Motion for Summary Judgment (doc. 16), DENIES Plaintiff Airline Professionals Association, Teamsters Local Union 1224's Motion for Summary  Judgment  (doc.  14),  and  DISMISSES  this  case  from  the Court's docket.

SO ORDERED.

Dated: October 20, 2005          <u>s/S. Arthur Spiegel         </u>
                                 S. Arthur Spiegel
                                 United States Senior District Judge